```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JORDAN SHULL

                Plaintiff,       6:18-cv-06429-MAT
                                 DECISION AND ORDER
                   -v-

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.
_____
```

## INTRODUCTION

Plaintiff Jordan Shull ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his applications for Child Disability Benefits and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Docket Nos. 12, 15. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On August 28, 2015, Plaintiff protectively filed an application for child's insurance benefits based on disability. Administrative Transcript ("T.") 16, 140-41. Plaintiff also

protectively filed an application for SSI on July 16, 2015. T. 16, 139. In both applications, Plaintiff alleged disability as of August 1, 2009, due to asthma and an inability to "stand for very long." T. 16, 142-43, 147-48, 151-52. The claims were initially denied on September 18, 2015. T. 16, 155-176.

A video hearing was conducted on April 13, 2017, before administrative law judge ("ALJ") Gregory M. Hamel. T. 16, 34-66. The claimant appeared in Rochester, New York, and the ALJ presided over the hearing from Alexandria, Virginia. *Id*. A vocational expert also testified. *Id*. The ALJ issued an unfavorable decision on June 27, 2017. T. 13-29. Plaintiff appealed the decision to the Appeals Council, which denied his request for review on May 21, 2018, making the ALJ's decision the final determination of the Commissioner. T. 1-4. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Initially, the ALJ determined that Plaintiff, born on November 11, 1989, had not attained age 22 as of August 1, 2009, the alleged onset date. T. 19.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2009, the alleged onset date. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: asthma, obesity, and learning disability. *Id*. The ALJ also determined that Plaintiff's medically determinable impairment of pes planus with pain in his feet and lower legs, did not cause significant work-related functional limitations and thus was non-severe. *Id*.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 20. The ALJ specifically considered Listings 3.03 (asthma) and 12.11 (neurodevelopmental disorders). T. 20-21.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except that he cannot work in exposure to very high levels of dust, fumes, gases and other pulmonary irritants; can do only very routine and repetitive tasks; and cannot do tasks requiring public contact." T. 21.

At step four, the ALJ concluded that Plaintiff has no past relevant work. T. 26.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of stock clerk, hand packager, general office clerk, addresser, inspector, and hand packager. T. 27-28. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 28-29.

### **SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d

172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand solely for the calculation and payment of benefits is warranted because (1) the ALJ incorrectly evaluated the opinions of Paul Mitchell, FNP ("Mr. Mitchell"), Plaintiff's treating nurse practitioner, and (2) the ALJ erred in evaluating Plaintiff's credibility. *See* Docket No. 12-1 at 9-18. For the reasons discussed below, the Court finds that Plaintiff's arguments are without merit, and affirms the Commissioner's final determination.

**I.   Evaluation of Mr. Mitchell's Opinion**

Plaintiff first contends that the ALJ did not properly evaluate the opinions offered by Mr. Mitchell. *See* Docket No. 12-1 at 9. In assessing a disability claim, an ALJ must consider and weigh all of the medical opinions in the record. "When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the . . . source." *Williams v. Saul*, No. 3:16CV01777(SALM), 2019 WL 5388098, at *5 (D. Conn. Oct. 22, 2019) (citing 20 C.F.R. §§ 404.1527(c)(2)-(6),

416.927(c)(2)-(6)). However, the ALJ is not required to engage in a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Pursuant to the regulations, nurse practitioners are "other sources," and therefore their opinions are not entitled to controlling weight. *Wood v. Commissioner*, No. 17-CV-6799, 2019 WL 2170762, at *3 (W.D.N.Y. May 19, 2019); *see also Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) ("under the regulations, a nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for 'controlling weight.'"). "[W]hile the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). Accordingly, "[t]he ALJ 'has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on the all evidence before' him or her." *Suzanne M. v. Commissioner*, No. 6:18-CV-485(LEK), 2019 WL 4689227, at *5 (N.D.N.Y. Sept. 26, 2019) (quoting *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995)) (second alteration in original). However, "an ALJ may not disregard opinion evidence from a nurse practitioner or 'other source' solely because it was not authored

by an acceptable medical source." *Allen v. Commissioner*, 351 F. Supp. 3d 327, 340 (W.D.N.Y. 2018).

Plaintiff began treating with Mr. Mitchell in October 2015. T. 418, 435, 437. On March 2, 2016, Mr. Mitchell wrote that he "saw [Plaintiff] today for follow up exam. He is currently not able to work or volunteer for twenty hours per week. His Grandmother is trying to obtain services for [Plaintiff] and he was referred to Lakeview for an evaluation. Until [Plaintiff] is further evaluated for work force or other programs he remains unable to work." T. 420.

In July 2016, Mr. Mitchell completed a "Medical Examination for Employability." T. 418-19. Mr. Mitchell opined that Plaintiff could sit, see, hear, speak, use his hands, and climb stairs without limitations (defined as for more than four hours), as well as walk, stand, lift/carry, push/pull, bend/squat, and use public transportation with some limitations (defined as two to four hours). T. 419. With regard to his mental abilities, Plaintiff could interact appropriately with others, maintain social appropriate behavior, maintain basic standards of personal hygiene and grooming, use public transportation, make simple decisions, and perform simple tasks without any limitation; understand and remember simple instructions and maintain attention and concentration with some limitations; and was severely limited in understanding and remembering complex instructions. *Id.*

Mr. Mitchell also opined that Plaintiff was not physically/mentally able to maintain employment. *Id*.

On April 12, 2017, Mr. Mitchell completed an "Evaluation of Mental Work Limitations." *See* T. 433-36. Mr. Mitchell opined that Plaintiff had "moderate" limitations (meaning that he was unable to function 11 to 25 percent of the time) in the following areas: ability to comprehend and carry out simple instructions; ability to remember work procedures; ability to communicate clearly and effectively; ability to work in coordination with or proximity to co-workers; ability to maintain regular attendance and be punctual within customary tolerances; ability to concentrate and attend to simple work tasks; ability to perform at a consistent pace; ability to make simple work-related decisions; and ability to tolerate customary work pressures in a work setting, including ordinary job goals, production requirements and demands. T. 433-35. Plaintiff had an "unlimited" ability to interact appropriately with the general public. T. 434. Mr. Mitchell diagnosed Plaintiff with a learning disability and obesity, and opined that Plaintiff's condition likely would deteriorate if he was placed under stress. T. 435. Mr. Mitchell estimated, on average, that Plaintiff would be absent from work about one day per month due to his impairments, but that he did not recommend restricting the number of hours per day or days per week that Plaintiff should work. T. 436. Mr. Mitchell "believe[d] [Plaintiff] would do well in an assisted

work program. He will need guidance and training to be successful." *Id*.

Mr. Mitchell also completed an "Evaluation of Physical Work Limitations" on April 12, 2017. T. 437-39. Mr. Mitchell opined that Plaintiff did not suffer from a condition which can be expected to produce pain. T. 437. With regard to the following activities, Mr. Mitchell opined that Plaintiff could "never" engage in climbing and balancing; "occasionally" (defined as two to three hours per day) kneel, crawl, climb stairs, and pull; and "frequently" (defined as three to six hours per day) stoop, crouch, reach, and push. T. 437. Mr. Mitchell further opined that Plaintiff could continuously stand for two hours; stand for a total of six hours in a workday; walk for a total of two hours in a workday; continuously sit for three hours; and sit for a total of six hours during the workday. T. 438. Plaintiff could lift and carry 21-50 pounds at one time, and could lift and carry 21-50 pounds for three to six hours per day. *Id*. Mr. Mitchell estimated that, on average, Plaintiff would be absent from work about one day per month due to his impairments. *Id*. Plaintiff's pain was "rarely" (defined as one to five percent of the workday) severe enough to interfere with his attention and concentration to perform simple tasks, and he did not require a cane or other assistive device with occasional walking/standing. T. 438-39.

Mr. Mitchell did not recommend limiting the number of hours per day or days per week Plaintiff could work. T. 439.

It is clear to the Court that the ALJ weighed the opinion evidence offered by Mr. Mitchell in light of the above-mentioned regulatory factors. The ALJ discussed, at length, the opinion evidence offered by Mr. Mitchell, including the opinions he offered on April 12, 2017. *See* T. 25 ("Significant weight is given to the [April 2017] opinion of family nurse practitioner, Paul Mitchell, FNP, insofar as it is suggested that the claimant has no more than moderate mental limitations and would be absent from work only about one day per month."); *id*. ("Significant weight is further given to Mr. Mitchell insofar as he concluded in April 2017 that the claimant can perform at least light work. . . . Insofar as this suggests that [Plaintiff] can perform more than light work, less weight is given as this is out of proportion to the type and degree of treatment needed. In light of the medical evidence as a whole as well as the claimant's testimony the undersigned concludes that the claimant does not have any significant postural limitations."). The ALJ also discussed Mr. Mitchell's July 2016 opinion, including giving reasons why he did not afford it significant weight. Specifically, the ALJ explained that "to the extent Mr. Mitchell opined in July 2016, that the claimant was not physically and mentally able to maintain employment[,] no significant weight is given. This is out of proportion to the

relatively conservative treatment and few physical and mental findings as well as Mr. Mitchell's subsequent April 2017 opinions. Moreover, Mr. Mitchell is not an acceptable medical source." *See* T. 26.

The ALJ's consideration of Mr. Mitchell's more recent, April 2017 opinions, Plaintiff's conservative treatment, and Mr. Mitchell's status as a non-acceptable medical source, was proper. *See Allen*, 351 F. Supp. 3d at 341 (ALJ properly considered opinion from a nurse practitioner, a non-acceptable medical source, explaining that, among other reasons, the opinion was not entitled to any special weight); *Ganoe v. Commissioner*, No. 5:14-CV-1396(GTS/WBC), 2015 WL 9267442, at *4 (N.D.N.Y. Nov. 23, 2015) ("To be sure, an ALJ may take plaintiff's conservative treatment into consideration as additional evidence to support his overall determination regarding a treating source's opinion. . . . However, an ALJ cannot rely on a plaintiff's prescribed conservative treatment as substantial evidence to undermine the treating physician's opinion.") (citations omitted), *adopted*, 2015 WL 9274999 (N.D.N.Y. Dec. 18, 2015). In other words, "[Mr. Mitchell's] opinion was . . . considered, not overlooked . . . and the weight attributed to it was supported by the applicable regulatory factors." *Monette*, 654 F. App'x at 518 (citation omitted).

Plaintiff contends that the ALJ's evaluation of Mr. Mitchell's opinion is inconsistent with the denial of his claim. Docket No. 12-1 at 11. In support of this assertion, Plaintiff explains that "[t]he ALJ purported to give significant weight to the portion of Mr. Mitchell's opinion that Mr. Shull would be absent from work about one day per month. Yet, the ALJ denied Mr. Shull's claim while relying on the vocational expert's testimony . . . [that] it is 'quite entirely possible in the world of work' that being consistently absent from work one day per month would not be tolerated." *Id*. The Court has reviewed the transcript from the administrative hearing, and notes that Plaintiff's argument misrepresents the vocational expert's testimony regarding absences. The vocational expert initially testified that an employer would not tolerate "[m]ore than one unscheduled absence per month." T. 59. When Plaintiff's counsel subsequently inquired whether any work would be available for a person who missed one day per month, every month, the vocational expert responded that "it is quite entirely possible in the world of work that . . . would not be tolerated either." T. 60. The vocational expert noted that her opinion relating to tolerated absences was based on her job placement experience, rather than the Dictionary of Occupational Titles. T. 59. The vocational expert's testimony that it is possible in the "world of work" that there exists an employer who would not tolerate one absence every month does not change her

prior testimony that, based on her expertise, an employer would not tolerate more than one absence per month.  Further, the Court notes that Mr. Mitchell did not find that Plaintiff would be absent for one day "month after month," but rather "estimate[d], on the average," the number of days Plaintiff would likely be absent from work per month.  *See* T. 436, 438.  The ALJ's reliance on the vocational expert's testimony relating to Plaintiff's estimated absences is entirely consistent with his giving significant weight to that portion of Mr. Mitchell's opinion.

Plaintiff further contends that the ALJ erred by not adopting Mr. Mitchell's opinion regarding Plaintiff's mental capabilities because it "stands uncontradicted in the record."  Docket No. 12-1 at 12.  Plaintiff's argument overlooks the basic principle that an ALJ is not required to fashion an RFC that "perfectly correspond[s] with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Rather, the ALJ the is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id*.  As explained above, the ALJ afforded significant weight to a majority of Mr. Mitchell's opinions relating to Plaintiff's mental limitations, save for his opinions that go to the ultimate issue of disability.  Consistent with the majority of Mr. Mitchell's assessed mental limitations, the RFC limits Plaintiff to "very routine and repetitive tasks," and no tasks requiring public

-13-

contact. T. 21; *see also Johnson v. Berryhill*, No. 1:17-cv-00684-MAT, 2018 WL 4539622, at *6 (W.D.N.Y. Sept. 21, 2018) ("the ALJ included significant mental limitations in the RFC finding, including limiting Plaintiff to simple, routine tasks - a limitation which accounts for Dr. Baskin's findings regarding Plaintiff's difficulties in maintaining attention and concentration, performing complex tasks, and learning new tasks."). Remand is not required on this basis.

**II. The Credibility Determination**

Plaintiff's next and final argument is that the ALJ improperly evaluated his credibility. *See* Docket No. 12-1 at 14. "In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry." *Coger v. Commissioner*, 335 F. Supp. 3d 427, 435 (W.D.N.Y. 2018) (citing *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010)). First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the pain alleged. 20 C.F.R. § 416.929(b). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors,*

370 F. App'x at 183-84 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Taylor v. Barnhart*, 83 F. App'x 347, 350-51 (2d Cir. 2003)).

When finding a claimant not entirely credible, the ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2.  "While  it is not sufficient for the [ALJ] to make a single, conclusory statement that the claimant is not credible or simply to recite the relevant factors, remand is not required where the evidence of record permits us to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (internal quotations and citations omitted) (alteration in original).

Here, the ALJ properly applied the two-step inquiry. Specifically, the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with or well supported by the medical evidence and other evidence in the record[.]"  T. 23.  The ALJ identified specific activities performed by Plaintiff, including household chores, playing online video games, and socializing and communicating with

others online about video games, which belied his claims regarding the intensity of his symptoms. *See id*. ("Mr. Shull does a modest range of household activity, including helping with dishes, laundry, vacuuming, grocery shopping, and some simple meal preparation. He also spends a lot of time on video games as well as socializing and communicating online with others about this activity. This level of activity, though not conclusive as to any issue, is consistent with the residual functional capacity found."). It was proper for the ALJ to consider these activities when assessing Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a relevant consideration when assessing credibility).

Contrary to Plaintiff's implication (*see* Docket No. 12-1 at 15-16), the ALJ's credibility determination was not based solely on Plaintiff's testimony regarding his daily activities. Rather, the ALJ considered and weighed both the objective medical evidence, as well as Plaintiff's own testimony regarding his limitations. *See* T. 22 (discussing Plaintiff's allegations of disability, including his testimony at the administrative hearing, and his grandmother's and uncle's written statements regarding Plaintiff's activities). The ALJ explained that while he gave "some limited weight" to this evidence, it "must be viewed within the context of the entire record, including the medical reports." *Id*. The ALJ then identified specific medical evidence in the record - including

evaluations by Mr. Mitchell and Plaintiff's family practitioner, Dr. Dickinson, as well as opinions offered by consultative examiners, which contradicted the severe limitations reported by Plaintiff. *See, e.g.,* T. 24 (discussing Plaintiff's mostly normal physical examination at a consultative examination in September 2015); *id.* (discussing mostly normal evaluations by Mr. Mitchell in October and November 2015); T. 25 (discussing mostly normal examination by Dr. Dickinson in November 2016, including that Plaintiff had "some basic life skills, good communication skills, but limited social skills, social anxiety, and limited mobility," as well as intact cognitive functioning); *id.* (discussing opinion offered by Harbinder Toor, M.D., a consultative examiner, who assessed Plaintiff with "moderate limitations in standing and walking a long time because of pain in the feet and lower part of the legs and that he should avoid irritants or other factors which can precipitate asthma."); *id.* (discussing Mr. Mitchell's April 2017 conclusion that Plaintiff can perform "at least light work," and his statement that Plaintiff "rarely has pain.").

Plaintiff contends that the ALJ did not properly evaluate the credibility of his grandmother, arguing that "[t]he testimony of lay witnesses may be entitled to great weight if uncontradicted in the record." *See* Docket No. 12-1 at 17. He cites to several cases standing for the proposition that the ALJ is required to consider and address evidence from third-party witnesses. *Id.* Plaintiff's

argument misses the mark. The ALJ did consider, weigh, and address the evidence offered by Plaintiff's grandmother, and adequately explained why he gave her testimony only "some weight." *See* T. 22. That is all that is required in this instance. Simply because Plaintiff disagrees with the weighing of his grandmother's written statement is not grounds for reversal. Remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is denied, and the Commissioner's motion for judgment on the pleadings (Docket No. 15) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   December 11, 2019
         Rochester, New York